IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRACE OLECH, and PHYLLIS S. )
ZIMMER, as Independent )
Executor of the Estate of )
Thaddeus F. Olech, Decedent, )
)
    Plaintiffs, )
)
    -vs- )
)
VILLAGE OF WILLOWBROOK, an )
Illinois municipal corporation, )
GARY PRETZER, individually and )
as President of Defendant )
VILLAGE OF WILLOWBROOK, and )
PHILIP J. MODAFF, individually )
and as Director of Public )
Services of Defendant VILLAGE )
OF WILLOWBROOK, )
)
    Defendants. )

No. 97 C 4935

Magistrate Judge Schenkier



DOCKETED
FEB 2 0 2002

FILED
FEB 1 9 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Plaintiffs, GRACE OLECH, and PHYLLIS S. ZIMMER, as Independent Executor of the Estate of Thaddeus F. Olech, Decedent, by and through their attorney, JOHN R. WIMMER, and submit this memorandum of law in opposition to the Defendants' motion for summary judgment.

1.   <u>Standard of review of a motion for summary judgment.</u>

Defendants' statement of the standard of review of a motion for summary judgment is generally adequate. Additional authorities regarding summary judgment are discussed in particular sections of this memorandum.

Defendants, in their motion, have not challenged the sufficiency of Plaintiffs' evidence on proximate cause or damages

- 1 -

so Plaintiffs have not, in this memorandum or in their Rule
56.1(b)(3) statement, set forth matters pertaining to those
issues.  References herein to numbered paragraphs will be to the
responses in Plaintiffs' Rule 56.1(b)(3) statement, and *not to
the paragraphs in Defendants' Rule 56.1(a)(3) statement*.

>    2.  <u>The jury could conclude that the disparate treatment of
>    the Olechs was not rationally related to a legitimate
>    governmental objective.</u>

The Supreme Court stated in this case:

>    "Our cases have recognized successful equal protection
>    claims brought by a `class of one,' where the plaintiff
>    alleges that she has been intentionally treated differently
>    from others similarly situated and that there is no rational
>    basis for the difference in treatment."

>    (*Village of Willowbrook v. Olech*, 528 U.S. 562, 564
>    (2000).)

The term "rational basis" refers to a basis that is "rationally
related to a legitimate state interest."  (*City of New Orleans v.
Dukes*, 427 U.S. 297, 303 (1976).)  In this case the Supreme Court
held that the allegations of the complaint, "quite apart from the
Village's subjective motivation" (528 U.S. 562, 565), stated a
claim for relief.  The Supreme Court stated that it did not reach
"the alternative theory of `subjective ill will'" relied on by the
Seventh Circuit.  (528 U.S. 562, 565.)

Accordingly, under the Supreme Court's decision in this case,
Plaintiffs must show that the disparate treatment of the Olechs was
not rationally related to a legitimate state interest.  The
Defendants' attempts to apply a different standard to this case are
unavailing.  This Court is bound by the Supreme Court's decision in
this case "as the law of the case" (*In re Potts*, 166 U.S. 263,
265 (1897)), and "no question, once considered and decided by this

- 2 -

court [the Supreme Court], can be re-examined at any subsequent stage of the same case." (*In re Sanford Fork & Tool Co.*, 160 U.S. 247, 259 (1895).) Defendants' contentions that Plaintiffs must show that the disparate treatment was "wholly unrelated" to a legitimate governmental interest, as opposed to not rationally related, and that Plaintiffs must show that Defendants were motivated by ill will (see section 5 below) are not well taken.

Plaintiffs' real estate law expert, Bashaw, who reviewed Willowbrook's Water Map, which shows the locations of Willowbrook's water mains, and who reviewed other public records, concluded that "despite the fact that there are roadways with a comprehensive water service system to serve the adjacent properties, it appears that there is no dedication of the roadways in the general area of the Olech property and no easements granted in favor of the Village of Willowbrook relating to roadway use, utilities, or public purposes." (Par. 62) Bashaw listed twelve properties on Tennessee Avenue, Bentley Avenue, Western Avenue, Clarendon Hills Road, 59th Street, 61st Street, and 65th Street to which water service is provided by Willowbrook as examples. (Par. 62) There is no rational basis relating to a legitimate governmental objective for Willowbrook to have required the Olechs to grant a 33-foot dedication or easement, and not to have required such a dedication or easement from these other property owners on nondedicated streets. Indeed, Defendants have not even suggested one, nor should they be allowed to advance new arguments in their reply.

Moreover, the jury in this case may choose to believe the admission contained in the Village Attorneys' letter of November 10, 1995, that a 15-foot easement, with a temporary construction

- 3 -

easement of five feet on each side, was "consistent with Village policy regarding *all other property in the Village*." (Emphasis added.) (Pars. 184, 185, 188) There is no rational basis related to a legitimate governmental objective for demanding a 33-foot easement from Olechs and a 15-foot easement with respect to "all other property" in the village.

Gorski agreed with Plaintiffs' expert witness that the language in the Olechs' deed that the conveyance was "subject to the right of public travel over the East Thirty-three feet thereof" did not create any affirmative rights in the public. (Par. 1) Gorski testified that Willowbrook had acquired rights to Tennessee Avenue by prescription. (Par. 67) Gorski testified that the geographical location of a public highway acquired by prescription is the strip of land used for travel and drainage. (Par. 67) The portion of the Olech property which had been used for travel and drainage was the eastern 13.1 feet of the property (Par. 157), not the eastern 33 feet of the property. Gorski testified that a village has a right to install water mains within a public highway obtained by prescription, and may do so without first going to court to get a court decision that there had been a prescriptive easement. (Pars. 94, 204) Gorski testified that Willowbrook did not need to obtain any property rights at all by grant from the property owners involved in this case in order to install the water main. (Par. 173) Willowbrook never offered to put in the water main in the area of its prescriptive easement without obtaining a 33-foot dedication or easement (Par. 94), which dedication or easement was not required of the other property owners identified by Bashaw. Gorski had no reason to believe that litigation would

- 4 -

have resulted had Willowbrook asserted a prescriptive easement. (Pars. 94, 95, 171)

Defendants' argument on this issue misses the mark because it addresses only whether the government's treatment of the Olechs in the abstract was rationally related to a legitimate governmental interest, and it does not address the question presented by this case, which is whether the difference in treatment between the Olechs and others similarly situated was rationally related to a legitimate governmental interest. As stated in *Olech*, the question is whether there is a rational basis for the "difference in treatment." (528 U.S. 562, 564.) Government treatment of a person, considered in the abstract, may be rationally related to a legitimate governmental objective but still run afoul of the Equal Protection Clause when compared to governmental treatment of others. For example, the equal protection violation recognized by the Supreme Court in *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923), cited the Supreme Court in *Olech*, was the assessment of one taxpayer's property at 100% while the property of others was assessed at 55%. (260 U.S. 441, 445.) Such conduct would violate the Equal Protection Clause even though, considered in the abstract and not in relation to the assessment of the property of others, the taxation of the bridge company's property at 100% was rationally related to a legitimate governmental objective. It was the difference between taxpayers in the percentage of value at which property was assessed that rendered the conduct unconstitutional.

3. <u>Vena was not treated in an identical fashion by Willowbrook, and even if he had been, that fact would not entitle the Defendants to summary judgment.</u>

Even if Willowbrook had treated Vena, the owner of the
Arabian Knights Horse Farm, in the same fashion as Olech, that fact
would not destroy Olechs' claim, but rather would mean that Vena,
also, had a claim.  This principle may be illustrated by example.
If a government-run cafeteria refused to serve several
African-Americans, it could not defeat the equal protection claim
of one by pointing out that it also refused to serve others.  The
case of *Albiero v. City of Kankakee*, 246 F.2d 927 (7th Cir.
2001), cited by Defendants, does not support Defendants' position
on this matter.

In any event, the fact is that Willowbrook did not treat Vena
the same as Olech.  Willowbrook's testimony on this point was
subject to numerous contradictions under oath, and the jury could
conclude that it is based on perjury and an attempt to cover up the
fact that Willowbrook treated Vena differently from Olech.  (Pars.
104, 130, 138)  Although Willowbrook requested a 33-foot dedication
of Vena, it did not require it as a condition of any permit even
though Vena installed a sanitary sewer under Tennessee Avenue.
(Pars. 104, 130, 138)  Vena installed the sewer *before* he
granted Willowbrook any rights in Tennessee Avenue.  (Par. 104)

Moreover, the jury could well determine that Willowbrook did
not have a general policy or custom of seeking dedications in
connection with permit requests for utility connections along
nondedicated roadways.  (Pars. 62, 106)

Finally, it was not in 1995 that Willowbrook learned of its
lack of rights in Tennessee Avenue, and Willowbrook was not under
the "assumption" that there was a valid right-of-way on roads that
it annexed.  Fay knew in the late 1980s that Tennessee Avenue was

- 6 -

not dedicated or that there was doubt with respect to the title of the road. (Par. 21) Fay also testified that, when an extension of utilities along a roadway is requested, the procedure is to consult the DuPage County Tax Parcel Atlas to determine if the village has rights in the roadway. (Pars. 72, 197) Such a procedure is not the same as "assuming" that Willowbrook owns the roadway. Moreover, Willowbrook had enacted subdivision regulations which require Willowbrook to obtain a right-of-way when property is subdivided. (Par. 199) Those regulations are inconsistent with the theory that Willowbrook "assumed" that there were valid right-of-ways on roads that it annexed. (See also Pars. 196, 197, 198, 199, 200) Moreover, Oglietti testified that Willowbrook had a policy of requiring a 33-foot dedication or easement from property owners who requested connection to village utilities along roadways over which the village maintains no rights or interests (Par. 106), and that said policy has been consistent since Willowbrook was incorporated in 1960. (Par. 210) Although the jury need not believe that Willowbrook had such a policy (Par. 106), Oglietti's testimony is inconsistent with the theory that Willowbrook "assumed" that it had a valid right-of-way on roads that it annexed. The jury may well conclude that Willowbrook did not request a dedication or easement from the property owners on Bentley Avenue, 65th Street, and Western Avenue based on Village Attorney Gorski's theory concerning Willowbrook's right to use public highways acquired by prescription. (Pars. 198, 200, 204, 205) (See discussion in Section 2 herein.) The jury need not believe that the failure to request dedications or easements on those roads was "an oversight."

Finally, Gorski did not want to settle the easement issue to avoid litigation that would delay the project. (Pars. 171, 172) Gorski and Modaff did not discuss the matter of 15-foot easements in side yards as claimed by the Defendants. (Par. 178) The jury need not believe that 15-foot easements are "generally limited to side yards," where the Village Attorney's letter stated that a 15-foot easement was consistent with "all other property in the Village." (Pars. 184, 187) The jury need not believe that Gorski did not mean what he said. The Arabian Knights Horse Farm was not required to dedicate anything as a condition of any permit (Par. 104), and the Borman Subdivision was governed by subdivision regulations not applicable to the Olech situation. (Par. 107)

4. <u>The jury need not believe that the disparate treatment of the Olechs was unintentional.</u>

It is, in fact, an element of the Plaintiffs' case that they prove that the disparate treatment of the Olechs was intentional. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The decision to demand a 33-foot dedication of the Olechs as a condition of receiving municipal water was made collectively by a number of Willowbrook employees, including Oglietti, Fay, and Modaff. (Par. 145) Gorski, the Village Attorney, was not involved in that decision. (Pars. 100, 148, 151) There is no question that Willowbrook's treatment of the Olechs was intentional.

Moreover, the jury could conclude that Willowbrook's conduct in not demanding dedications or easements from the other property owners on nondedicated roads identified by Bashaw was intentional. (See discussion in section 3 hereof.) Although Defendants argue that Willowbrook did not treat those other property owners as the

- 8 -

Olechs were treated because the village "assumed" that it already owned rights-of-way adjacent to those other property owners, the jury is not required to believe that explanation. (See discussion in section 3 hereof.) (See also Par. 205) The jury does not have to believe that Willowbrook made "mistakes" on 59th Street, 61st Street, 65th Street, Tennessee Avenue, Bentley Avenue, Western Avenue, and Clarendon Hills Road.

Moreover the jury may choose to believe the statement in the Village Attorney's letter that a 15-foot easement "is consistent with Village policy regarding all other property in the village." (Pars. 184, 188) If the jury does so, it could certainly find that the decision by Oglietti, Fay, and Modaff to treat the Olechs differently was intentional. The jury does not have to believe that the Village Administrator, the Director of Community Development, and the Director of Public Services were all ignorant of this 15-foot village policy which governed their conduct.

Moreover, the strong evidence of ill will against Olech in this case (Par. 145) (see also the discussion in section 5 hereof) is additional evidence that the disparate treatment of the Olechs was intentional.

As the Supreme Court stated in *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999), "[o]utright admissions of impermissible . . . motivation are infrequent and plaintiffs often must rely upon other evidence." And, as stated in *Sarsha v. Sears, Roebuck & Company*, 3 F.3d 1035, 1042 (7th Cir. 1993), "summary judgment is particularly inappropriate for settling issues of intent or motivation [citations omitted], especially where, as here, the claim is brought under a statute that allows for trial by jury."

- 9 -

Finally, as this case makes abundantly clear, contrary to the claims of the Defendants, water mains do not have to be placed in dedicated rights-of-ways but may be placed in an easement or, according to Gorski, in a roadway over which the government has obtained rights by prescription. (Pars. 94, 101) And, as noted in section 2 hereof, the "subject to" language in Olechs' deed created no affirmative rights. As noted in section 2 hereof, the portion of the Olech property which, according to Gorski's theory, Willowbrook owned by prescription was the east 13.1 feet, not the east 33 feet Willowbrook was demanding. Finally, although Willowbrook's subdivision regulations were not applicable to the Olechs' request, they specify a 60-foot right-of-way and show that sixty-six feet is not the typical right-of-way in Willowbrook subdivisions. (Par. 107)

> 5. <u>The Plaintiffs do not have to prove that the disparate treatment of them was motivated by ill will, but, in any event, there is substantial evidence from which the jury may make a finding of ill will.</u>

The Plaintiffs in this case are not required to prove ill will. (See the discussion in Section 2 hereof.) Moreover, the case of *Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001), cited by Defendants, supports the Plaintiffs' position on this issue. In *Albiero*, the Seventh Circuit stated that in *Olech*, the Supreme Court had recognized class-of-one equal protection claims "'where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (246 F.3d 927, 932) The Seventh Circuit then stated, citing *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995),

- 10 -

that "[u]nder our circuit precedent, an individual *also* may
state a claim under the Equal Protection Clause if he can show that
state government took an action that `was a spiteful effort to
"get" him for reasons wholly unrelated to any legitimate state
objective.'" (Emphasis added.) (246 F.3d 927, 932.) Thus, in
*Albiero*, the Seventh Circuit recognized that the type of equal
protection claim recognized in *Esmail*, which requires a showing
of ill will, is an alternative to the type of equal protection
claim recognized by the Supreme Court in this case, which does not
require a showing of ill will.

In any event, in this case there is substantial evidence from
which the jury could find that the disparate treatment of the
Olechs was a result of ill will. (See Par. 145.) Such evidence
includes, but is not limited to, the fact that during the pendency
of the state court lawsuit Willowbrook's Chief Building Inspector
told the Zimmers that the village really hated Grace Olech; that
village employees had expressed frustration to Kenneth Menzel, one
of Willowbrook's attorneys, which stemmed from the fact that the
Olechs had not cooperated with a storm water drainage project
proposed by Oglietti and had turned around and sued the village
over storm water; that Oglietti felt the publicity concerning the
state court lawsuit against Willowbrook was "regrettable"; that
village employees felt that Olechs' state court lawsuit was
meritless and frivolous even though Willowbrook lost that lawsuit;
that when Modaff, the village's risk manager, went out to Olechs'
house in connection with the request for water main extension, he
refused to look at her well and, instead, asked Olech about storm
water flow; that Modaff, in his notes relating to the water main

- 11 -

extension wrote, "Zimmer gone to press?"; that Willowbrook asked
its attorney to research whether Willowbrook could refuse to
provide water to Olech; and that Willowbrook did not want to offer
a monetary settlement of the state court lawsuit even though its
insurer might have been disposed to do so.  (Pars. 33, 145, 171,
221, 223, 231)  Punishing the Olechs for their conduct related to a
meritorious lawsuit is not a legitimate governmental objective.

        Finally, assuming that Plaintiffs are required to prove ill
will, Defendants' claim that the Plaintiffs must do more than
produce facts which would allow a jury to infer that illegitimate
animus motivated the defendant is not supported by any case law.
If a jury can make a legitimate inference of the existence of an
element of Plaintiffs' case, summary judgment should be denied.
(See *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (in ruling on
motion for summary judgment, all justifiable inferences are to be
drawn in favor of nonmovant).)  As the Supreme Court stated in
*Hunt*, "[o]utright admissions of impermissible . . . motivation
are infrequent and plaintiffs often must rely upon other
evidence."  526 U.S. 541, 553.

        The Plaintiffs did not refuse to attend a meeting "to resolve
the easement and dedication issues" (Par. 149), but rather
Willowbrook called a meeting to discuss the Plat of Easement
requiring 33-foot easements on both sides of Tennessee Avenue.
(Par. 149)  Plaintiffs telephoned Modaff before the meeting and
told him that "we've gone over this" already, and that the
Plaintiffs were willing to give an easement adequate for the
project.  (Par. 151)  Moreover, Olechs' attorney notified Gorski on
November 6, 1995, that the hose that the Olechs were using to

obtain water from the Zimmers froze, and that the Olechs were
without water.  (Par. 193)

   6.  Summary judgment for Modaff and Pretzer on the issue of
       qualified immunity would be inappropriate.

It is true that municipal officials, as opposed to the
municipality itself, generally are shielded from liability for
civil damages under the doctrine of qualified immunity insofar as
their conduct does not violate a clearly established statutory or
constitutional right of which a reasonable person would have known.
*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

    In its *Olech* opinion, the Supreme Court cited a decision
from 1923 in support of its statement that "[o]ur cases have
recognized successful equal protection claims brought by a `class
of one,' where the plaintiff alleges that she has been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in
treatment." (528 U.S. 562, 564.)  The Seventh Circuit precedent,
*Esmail*, which provides an alternative type of equal protection
claim, was decided in April of 1995, before the events in this
lawsuit.  "[A] reasonably competent public official should know the
law governing his conduct." *Harlow*, 457 U.S. 800, 819.

    Modaff's and Pretzer's argument that qualified immunity
should protect them in the absence of a Supreme Court or Seventh
Circuit decision applying equal protection principles to a request
for the construction of a public utility along a road where no
public right-of-way existed is not well taken.  "Because there is
an almost infinite variety of factual scenarios that may be brought
into the courtroom, a plaintiff need not point to cases that are

- 13 -

identical to the presently alleged constitutional violation."
(*Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).)  To
defeat a defense of qualified immunity, all that is required is
that "'the contours of the right . . . have been established so
that the unlawfulness of the Defendants' conduct would have been
apparent in light of existing law.'"  *Denius*, 209 F.3d 944,
950.

     In the preceding sections hereof, Plaintiffs have shown that
a jury could conclude that Defendants intentionally treated the
Olechs differently from others similarly situated, that the
difference in treatment was not rationally related to a legitimate
governmental objective, and that the disparate treatment resulted
from ill will on the part of Willowbrook employees stemming from,
among other things, the state court lawsuit.  If the jury makes
those conclusions, it will be finding that, in treating the Olechs
differently, Modaff and Pretzer were acting in violation of
established law, and they will not be entitled to qualified
immunity.

     In this regard, it should be recalled that the decision to
demand a 33-foot dedication was made by Modaff, Oglietti, and Fay,
and not on the advice of the Village Attorney.  (Pars. 100, 145,
148, 151)  Moreover, Robin N. Jones' memorandum did not suggest
that Willowbrook demand a 33-foot easement.  (Par. 148)  On Olech's
property, the paved roadway and adjacent drainage ditch are on the
east 13.1 feet of the Olech property, not the east 33 feet.  (Par.
157)

     Moreover, because Defendants have not, to this day, suggested
a rational basis related to a legitimate governmental objective for

- 14 -

treating Olech differently from other property owners on nondedicated streets who were not required to grant a dedication or easement, or differently from the village's policy of requiring a 15-foot easement, Modaff and Pretzer cannot successfully argue that they could have believed that such a rational basis existed.

Finally, Modaff and Pretzer can take no comfort in the Arabian Knights Horse Farm scenario. (Par. 104) See also the discussion in section 3 hereof.

7. **The jury may award the Plaintiffs punitive damages from Modaff and Pretzer.**

Modaff was involved in the decision to demand the 33-foot dedication (Par. 145), and Pretzer informed Olech's daughter, Phyllis Zimmer, of the decision. (Par. 168) In light of the substantial evidence of ill will stemming from the state court lawsuit (Par. 145) (see discussion in Section 5 hereof), the jury could conclude that the disparate treatment of the Olechs was a result of evil motive or intent, or a reckless indifference to Olechs' federally protected rights. Olech requested municipal water in May of 1995. (Par. 27)

WHEREFORE, for the above and foregoing reasons, the Plaintiffs, Grace Olech, and Phyllis S. Zimmer, as Independent Executor of the Estate of Thaddeus F. Olech, Decedent, respectfully request that the Defendants' motion for summary judgment be denied in its entirety, and that a date be set for jury trial.

Respectfully submitted,

JOHN R. WIMMER
Attorney at Law
928 Warren Avenue
Downers Grove, Illinois  60515
(630) 810-0005
Attorney No. 03125600

John R. Wimmer

- 15 -