Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 4935 | **DATE** | 10/10/2002 |
| **CASE TITLE** | Grace Olech, *et al.* vs. Village of Willowbrook, *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER RULINGS ON MOTIONS IN LIMINE.** Defendants' motions in limine are granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | OCT 11 2002 |
| ✓ | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | 10/10/2002 |
| | Copy to judge/magistrate judge. | date mailed notice |

courtroom deputy's initials: JJK

JJK777

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

92

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GRACE OLECH, and PHYLLIS S. )
ZIMMER, as Independent Executor )
of the Estate of THADDEUS F. OLECH, )
Decedent, )
                 )
          Plaintiffs, )     No. 97 C 4935
                 )
vs. )     Magistrate Judge Schenkier
                 )
VILLAGE OF WILLOWBROOK, an Illinois )
municipal corporation, GARY PRETZER, )
individually and as President of Defendant, )
Village of Willowbrook, and PHILIP J. MODAFF, )
individually and as Director of Public Services )
of Defendant, Village of Willowbrook, )
                 )
          Defendants. )

DOCKETED

OCT 1 1 2002

## RULINGS ON MOTIONS IN *LIMINE*

This one-count "class of one" equal protection claim has had a long history in federal court, including an appearance in the Supreme Court of the United States. *See Village of Willowbrook v. Olech,* 528 U.S. 562 (2000). In a nutshell, plaintiffs claim that the defendants improperly attempted to condition a municipal water main connection to her home on the grant of a 33-foot easement to the Village. Plaintiffs claim that this demand not only resulted in their being deprived of running water during the winter of 1995-96, but also deprived her of equal protection under the laws in violation of the Fourteenth Amendment to the United States Constitution.

In May 2002, the Court denied the defendants' summary judgment motion. *See Olech v. Village of Willowbrook,* No. 97 C 4935, 2002 WL 1058843 (N.D. Ill. May 24, 2002). The case is

now set for trial to commence on October 28, 2002. The defendants have filed five motions in *limine*, which we address in turn.

## I.

In their first motion in *limine* ("Motion in *Limine* No. 1"), the defendants seek to bar testimony as to certain purported statements of John Lossin, who was the Chief Building Inspector for the Village between 1988 and 1994. The plaintiffs seek to offer evidence that Mr. Lossin made certain statements to plaintiff Phyllis Zimmer (and her husband), with whom Mr. Lossin had been acquainted for more than 20 years and with whom he had socialized in the past, about the attitude of the Village toward the plaintiff Grace Olech as a result of the storm water drainage litigation filed by the Olechs and Zimmers in 1989. As the parties know, Ms. Zimmer is Ms. Olech's daughter, and she lives on property adjacent to Ms. Olech on Tennessee Avenue.

The alleged statements at issue occurred on two separate occasions sometime in 1992 (although no one can remember precisely when). The first statement was made at an awards ceremony to name and honor the Zimmer's daughter as "Youth Citizen of the Year"; Ms. Zimmer does not remember whether the Chamber of Commerce or the Village sponsored the banquet. At this banquet, Mr. Lossin allegedly said to the Zimmers, in regard to the storm water drainage litigation, which was then pending: "you really have a beautiful piece of property, but the Village is ruining it," and "the Village really hates your mother [Grace Olech]. She's the one." *See* Pl.'s Ex. 1, at 50. Mr. Lossin also allegedly said to Mr. Zimmer, "Boy, Willowbrook really hates your mother-in-law," and "they're giving you a hard time, aren't they?" (Pl.'s Ex. 42, at 15).[1]

_____

[1]During a separate chance meeting at a restaurant, Mr. Lossin's wife is also purported to have said that there was a "gag order" on Mr. Lossin by the Village. The Village has not made this comment the subject of Motion in *Limine* No. 1, but we note that the parties dispute whether this comment was ever made. We also note that Mr. Lossin maintains

The defendants seek to bar these alleged statements – which Mr. Lossin denies making – as inadmissible hearsay. Alternatively, defendants argue that these statements should not be admitted because they are unfairly prejudicial under Fed. R. Evid. 403 (Defs.' Mot. at 3). The plaintiffs concede that the alleged Lossin statements are not admissible against the individual defendants (Pls.' Resp. at 4), but contend that these alleged statements are admissible against the Village as non-hearsay under Fed. R. Evid. 801(d)(2)(D), because they are admissions by a party ("party-opponent exception"), and that admission of the statements would not cause unfair prejudice (Pls.' Resp. at 2, 4).

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Rule 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Breaking this down, the requirements for admissibility under Rule 801(d)(2)(D) are: (1) a statement by an agent or servant, (2) regarding a matter within the scope of the agency or employment, and (3) made during the existence of the relationship. The only element contested by the Village is the second one: the Village claims Mr. Lossin's purported statements did not fall within the scope of his employment as Chief Building Inspector.

"Statements fall within the scope of employment only if there is evidence to suggest that the declarant's employment compelled the statement." *McCammond v. Oxford Bank & Trust*, Nos. 95

---

that Mr. Fay and Mr. Oglietti simply told him to be "professional." It is unclear whether anything else was said or observed by Mr. Lossin during this meeting or what, if anything, he may have been told, overheard or observed.

C 2213, 96 C 1970, 1998 WL 708796, at * 4 (N.D. Ill., Sept. 30, 1998). Where a party is attempting to offer a statement as a party admission under Rule 801(d)(2)(D), that party has the burden of offering evidence to suggest that the "matter" that plaintiff wants the jury to believe is "truth" (*i.e.*, a statement offered to prove the truth of the matter asserted) falls within the scope of the declarant's agency with the employer and/or that the declarant was otherwise privy to or involved in the "matter" which is the subject of the statements. *See Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1565 (11th Cir. 1991) (discussing what Rule 801(d)(2)(D) requires to show that a statement is admissible). *See also Waugaman v. University of Chicago Hospitals,* No. 00 C 2581, 2002 WL 472278, at * 7 (N.D. Ill., March 28, 2002) (characterizing burden as one of establishing a "foundation" for the statement).

The Seventh Circuit has cautioned that "not everything that relates to one's job falls within the scope of one's agency or employment." Two cases from the Seventh Circuit illustrate this point. In *Williams v. Pharmacia, Inc.,* 137 F.3d 944, 950 (7th Cir. 1998), the Circuit Court reversed a district court's ruling that admitted out-of-court testimony by five female employees expressing dissatisfaction with their employer as falling within the Rule 801(d)(2)(D) exception, because there was no evidence that any of the five women were "privy to or participated in [the employer's] decisions" affecting the plaintiff. *Id.* at 950-51 (noting that 1997 Amendment to Rule 801(d)(2)(D) added the following language: "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof under subdivision (D)"). Similarly, in *Krause v. City of LaCrosse,* 246 F.3d 995 (7th Cir. 2001), the Seventh Circuit found that not every statement made by a municipal employee is sufficient to bind the municipality. In *Krause,* an Equal Pay Act and Title VII case brought by a municipal finance department

4

employee, the Seventh Circuit upheld a trial court's decision precluding the plaintiff from introducing testimony as to statements made by an assistant police chief. *Id.* at 1001-02. The statements by the assistant police chief indicated his belief that the decision to transfer the plaintiff to a "dimly lit" back office was a punishment. *Id.* The Court reasoned that the statements did not fall within the Rule 801(d)(2)(D) exemption, because the assistant chief was not acting within the scope of his employment when he made the statements. *Id.* (the assistant police chief did not work in same department as plaintiff but only visited her there once). "To hold otherwise would hold a city accountable for statements made by any city employee, and Rule 801(d)(2)(D) does not cast such a wide net." *Id.* at 1002.

Here, the plaintiffs offer Mr. Lossin's alleged statements to prove that the Village "hated" Ms. Olech, was giving the Olechs (and Zimmers) a hard time over the storm water drainage litigation, and that this animus drove the Village's conduct in dealing with the Olechs' 1995 request to connect to the Village water supply. The plaintiffs have offered only one piece of evidence that Mr. Lossin was involved in or privy to information regarding the storm water drainage litigation as part of his duties as Chief Building Inspector. In a memorandum, dated February 3, 1992, John Fay, the Village Director of Community Development and Mr. Lossin's immediate supervisor, wrote to Mr. Lossin and some of the other administrators in the Village, advising them that they might be subpoenaed to testify regarding the storm water drainage litigation and requesting that, if subpoenaed, he be informed (Pls.' Proposed Ex. 25) ("Fay Memorandum"). The plaintiffs argue that the Fay Memorandum shows that the defense the storm water drainage litigation was within the scope of Mr. Lossin's employment, and therefore any statements he made regarding it are admissible.

5

However, the Fay Memorandum is insufficient to establish that Mr. Lossin's alleged statements were within the scope of his employment. *First,* Mr. Lossin's job title does not, by itself, show that his employment with the Village (*i.e.,* his agency relationship) would provide him with access to the kind of matters and motivations of which he purportedly spoke when he allegedly made the statements at issue. *See Wilkinson,* 920 F.2d at 1565-66 (position of individual in corporate hierarchy not determinative of Rule 801(d)(2)(D) issue). *Second,* the Fay Memorandum does not provide evidence that Mr. Lossin's job as Chief Building Inspector would provide him with such access. The Fay Memorandum shows that Mr. Fay thought that Mr. Lossin might be subpoenaed in the storm water drainage litigation, along with any number of other employees holding managerial positions with the Village. But there is no explanation by the plaintiffs of what role (if any) Mr. Lossin had in the events leading to that litigation, or in the Village's efforts to defend the suit. Indeed, the Fay Memorandum is captioned as relating to a "Franson Counter Claim" in the storm water drainage litigation, and the plaintiffs gives us no information or evidence from which to make any analytical connections between the Olech and Zimmer claims against the Village in that lawsuit and the Franson counter claim.

The contents of the purported statements of Mr. Lossin express his observations and/or opinions about the effects and motivations of the Village's decisions and actions in the storm water drainage litigation. But, Mr. Lossin's mere employment as chief building inspector, like the employment of an individual assistant police chief in *Krause,* does not transform any alleged statements he might have made regarding Village actions or attitude into admissions by the Village. As in *Pharmacia,* there is no evidence that Mr. Lossin was privy to or participated in any of the decisions or actions by Village administrators who were directly involved in and responsible for the

6

lawsuit and the underlying actions and decisions giving rise to the lawsuit. *See Campbell v. Fasco Industries, Inc.,* 861 F. Supp. 1385, 1392 (N.D. Ill. 1994) ("[t]o be admissible under Rule 801(d)(2)(D), . . . the statements must *concern* matters within the scope of the declarant's employment, not just be made within the scope of his employment").

The Village's Motion in *Limine* No. 1 is therefore GRANTED; as a result there is no need to consider the Village's alternative argument that Mr. Lossin's statements would be unfairly prejudicial under Rule 403.

## II.

In Motion in *Limine* No. 2, the defendants seek to bar any evidence of the outcome of the storm water drainage litigation (reached in 1997) under Rule 402 on grounds of relevance, and under Rule 403 as unfairly prejudicial. The defendants also seek to bar under Rule 408 any evidence of settlement negotiations (and/or their outcomes) in connection with the litigation. We will address the settlement negotiations request first.

## A.

At the threshold, we agree with plaintiffs' observation (Pls.' Resp. at 7-8) that the defendants have failed to adequately identify the basis in their motion for barring evidence of "settlement negotiations." However, any statements offered by plaintiff at trial which were made during the course of settlement negotiations must be excluded under Fed. R. Evid. Rule 408 to the extent they are offered merely "to prove liability for or invalidity of the claim or its amount." Therefore, to the extent defendants' Motion in *Limine* No. 2 seeks to bar evidence of settlement negotiations, the

motion is conditionally GRANTED without prejudice to plaintiffs attempting to show at trial that such evidence would be used for legitimate purposes under Rule 408.[2]

**B.**

With respect to evidence plaintiffs might seek to offer regarding the outcome of the storm water drainage litigation, the plaintiffs seek to offer evidence in 1997 a jury returned a verdict awarding the Olechs and Zimmers some $155,000 in damages. The Court finds that this evidence would be irrelevant to the liability and damages issues that must be decided in this case, and unfairly prejudicial under Rule 403.

As to liability, the plaintiffs seek to offer the outcome evidence for the purpose of demonstrating that the defendants harbored ill will due to the pending storm water drainage litigation, and because of this ill will retaliated against plaintiffs by demanding a 33-foot easement from her as a condition for receiving a water main extension (and, thus, running water). The plaintiffs point out that certain Village officials (although *not* the individual defendants) testified that they viewed that litigation as frivolous or without merit prior to the outcome of the case, and continued to do so even after the jury returned a $155,000 verdict for the Olechs and Zimmers. The plaintiffs say they wish to use this evidence because the continued dismissive attitude of these individuals about the merits of the storm water drainage litigation "shows the depth of their feelings of ill will" toward the plaintiffs (Pl.'s Resp. at 5-6).

---

[2]We note that the plaintiffs read Rule 408 to mean that they can offer statements made by individuals during the settlement negotiations "to prove knowledge or intent, or to negate the defense of mistake" (Pls.' Resp. at 8). In this case, the defendants' intent is an element of the case plaintiff must prove and goes directly to the issue of liability. Rule 408 says that "[evidence of conduct or statements made in compromise negotiations is . . . inadmissible" except for purposes that do not go to liability issues and/or defenses. To the extent plaintiffs wish to offer evidence of settlement negotiations to prove "bias or prejudice," they will need to demonstrate to the Court that such evidence truly goes to that issue and not to the issue of liability.

However, the testimony cited by the plaintiffs on this point was given by individuals other than the individual defendants; thus, as to the state of mind of those defendants, the evidence plainly is irrelevant. And, as to the "state of mind" of the Village, we note that the outcome of the storm water drainage litigation was unknown when the Village requested the 33-foot easement in 1995. Certainly, the defendants were aware that the storm water drainage litigation was pending at the time the easement issues at issue in this case arose, and plaintiffs are free to offer admissible evidence to show that the attitudes of the defendants about the litigation in 1995 affected how the defendants dealt with the plaintiffs request in 1995 to connect to the Village water supply (and some public officials have testified they then viewed the lawsuit as frivolous or without merit.) But, the outcome of storm water drainage litigation in 1997 could not have served as the basis for the alleged retaliation against the plaintiffs here in 1995 or 1996. We fail to see how the subsequent outcome of the storm water drainage litigation sheds light on the motivation of the Village some two years earlier. But, the outcome of storm water drainage litigation in 1997 could not have served as the basis for the alleged retaliation against the plaintiffs here in 1995 or 1996.

Evidence of the outcome of the storm water drainage litigation also is irrelevant to the issue of punitive damages. The plaintiffs cannot obtain punitive damages against the Village, but only against the individual defendants in their individual capacities. *See Newport News v. Fact Concerts, Inc.,* 453 U.S. 247, 269, 271 (1981) (municipalities are not liable for punitive damages). However, the testimony cited by plaintiffs was offered by Messrs. Fay and Oglietti. Their testimony about their own attitudes concerning the storm water drainage litigation is not probative of the alleged "reprehensibility" of the conduct of the individual defendants Modaff and Pretzer, who are the only named individual defendants against whom punitive damages may be sought.

9

What's more, the Court finds that any arguable relevance of this evidence on liability or damages issues is tenuous at best, and would be substantially outweighed by the risk of unfair prejudice and confusion. As explained above, the evidence that some Village officials still considered the storm water drainage litigation to be frivolous or meritless even after the 1997 verdict for the Olechs and Zimmers fails to shed little meaningful light on what their attitudes (and motivations) were in 1995 when they were presented plaintiffs' request to connect to the Village water supply. On the other hand, this evidence could have the untoward effect of leading the jury to conflate attitudes in 1995 with those in 1997, without considering how intervening events might have affected those attitudes. And, the evidence could lead the jury to assume that this lawsuit is meritorious merely because the plaintiffs prevailed in the storm water drainage litigation, or to decide damages by reference to the damages awarded in that case.

For these reasons, defendants' Motion in *Limine* No. 2 is GRANTED as to the outcome of the storm water drainage litigation, and conditionally GRANTED as to statements made during settlement discussions.

### III.

In Motion in *Limine* No. 3, the defendants also wish to exclude two statements made during the storm water drainage litigation: one by Village Attorney Gerald Gorski made during settlement negotiations at a pretrial conference, and one by outside counsel Kenneth Menzel made during his deposition in this case. The defendants contend that these statements are irrelevant and unfairly prejudicial. The plaintiffs, on the other hand, contend that both statements are admissible as admissions by a party-opponent under Rule 801(d)(2)(C) and (D), and their admission would not create unfair prejudice

10

### A.

The Court begins with the statement of Gerald Gorski. At a pretrial conference during the storm water drainage litigation , Mr. Gorski responded to an inquiry from the plaintiffs' counsel concerning settlement authority by stating that he "would see what he had in his wallet" (Defs.' Mot. at 11). The plaintiffs wish to use this statement as evidence that the Village bore ill will and contempt toward the plaintiffs and their counsel.

At the time, Mr. Gorski was counsel representing the Village in the storm water drainage litigation. Plaintiffs argue that Mr. Gorski was authorized to make such a statement, rendering it admissible under Rule 801(d)(2)(C), and that the statement was one by an agent of the Village and within the scope of that agency, rendering it admissible under Rule 801(d)(2)(D). The defendants argue that this statement should not be admitted because it was merely a "jest," made in an informal setting (Defs.' Mot. at 12). We agree that by his comment, surely Mr. Gorski did not propose that his settlement authority was equal to the sum of money he had in his wallet, or state that the Village was offering to settle the case for that amount. But the comment was a statement by Mr. Gorski, on behalf of the Village, that the storm water drainage litigation was without merit. We believe the evidence is relevant to show that this was the Village's view, and to permit plaintiffs to argue that the view that the Olechs and Zimmers were pursuing meritless litigation motivated the Village in its handling of the plaintiffs' 1995 request to connect to the Village water supply. We see no unfair prejudice from this evidence; the defendants will have the opportunity to offer evidence and argument to place this evidence into what they contend is the proper context. Thus, the motion is

DENIED as to the Gorski statement; however, that evidence will not be admitted as against the individual defendants in their individual capacities.[3]

### B.

We turn now to the statement Mr. Menzel made to plaintiffs' counsel during a deposition taken in this case. As recognized by the Court in its summary judgment opinion,

> Kenneth Menzel is an attorney who participated in the representation of the Village in the storm water drainage litigation . . . Mr. Menzel has testified that the Village was "frustrated" with Ms. Olech because she had not cooperated with the Village's proposed storm water drainage project (which included a request by the Village to Ms. Olech for an easement to her land to complete a drainage project) prior to the flooding. According to Mr. Menzel, it was the Village's position that Ms. Olech's lack of cooperation in obtaining the storm water drainage easement prior to the flooding resulted in the floods that served as the basis for Ms. Olech's 1989 lawsuit against the Village.

*Olech*, 2002 WL 1058843 at *7 (internal citations omitted). The plaintiffs assert that evidence of Mr. Menzel's statements is relevant, and wish to offer the statements as an admission by a party-opponent under Rule 801(d)(2)(C) or (D).

The Court agrees that the statement is relevant on the question of the attitude of the Village (but not the individual defendants) about the storm water drainage litigation, and that a jury may find that this attitude affected the Village's approach to handling the 1995 request. We also agree that Mr. Menzel's statements are admissible under Rule 801(d)(2)(C) and (D). The Court finds that as one of the Village attorneys, Mr. Menzel was authorized the make statements concerning the Village's views about the storm water drainage litigation. The Court further finds that the statements

---

[3]The defendants also assert, in passing and for the first time in their reply (Reply Mem. at 5), that this evidence should be excluded as a settlement offer under Rule 408. This argument is undeveloped and untimely, and thus waived. Moreover, even if not waived, it would be unavailing. Defendants state that Mr. Gorski's statement was in jest. The comment thus was not a genuine settlement offer, and does not implicate the considerations that underlie the exclusionary provision of Rule 408.

fall within the scope of Mr. Menzel's agency with the Village as one of the Village's attorneys in the storm water drainage litigation, Mr. Menzel would be privy to information regarding the reasons and/or motivations for the Village's decisions regarding issues in the case as a part of his job as an attorney helping defend the Village in this lawsuit.

While Mr. Menzel's statements may be based on statements of other Village officials, because he satisfies the requirements of Rule 801(d)(2)(C) and (D), we need not concern ourselves with identifying those people for purposes of admitting Mr. Menzel's statements. At most, the fact that these "other declarants" and/or the sources of Mr. Menzel's opinions are not identified goes to the weight and credibility of his statements, not to their admissibility. *See MCI Communications v. American Tel. And Tel. Co.*, 708 F.2d 1081, 1143 (7th Cir. 1983); *see also Brookover v. Mary Hitchcock Mem. Hosp.*, 893 F.2d 411, 415-18 (1st Cir. 1990) (citing cases and commentaries). And, while admission of Mr. Menzel's statements may be prejudicial to the defendants, it is not unfairly so. Any prejudice comes from the fact that such statements are relevant and helpful to the plaintiffs' case, which is not the type of prejudice that Rule 403 seeks to prevent.

Accordingly, Defendants' Motion in *Limine* No. 3 is DENIED as to the Gorski and Menzel statements, insofar as plaintiffs seek to offer them as against the Village; those statements may not be offered against the individual defendants in their individual capacities.[4]

---

[4]The defendants argue that Mr. Menzel's statement should be excluded because they were "made in the course of settlement negotiations" (Defs. Reply at 5). We do not accept defendants' assertion that Mr. Menzel's statements are barred by Rule 408 because the record clearly indicates that the statements were made during his deposition in this case.

## IV.

In Motion in *Limine* No. 4, the defendants seek to bar evidence of Mr. Kucera's request for connection to the Village water supply and the Village's response thereto. This motion is DENIED for the following reasons.

### A.

In 1995, the Village initially demanded a 33-foot right-of-way of the plaintiffs as a condition of connection to the municipal water system, and then later agreed to a smaller easement. In January 2001, Mr. Kucera (a residential property owner who lived near the Olech property on Tennessee Avenue) asked for a water main extension and was met by the Village with a "conditional" request for a dedicated 33-foot public right-of-way; as an alternative, the Village offered Mr. Kucera an option of providing a smaller dedicated easement for utility purposes  Mr. Kucera's request came after the Supreme Court had ruled in this case that the plaintiffs could state a "class of one" equal protection claim. *See Willowbrook v. Olech*, 528 U.S. 562, 563 (2000).

The plaintiffs seek to introduce evidence regarding Mr. Kucera's request for a water main extension and the Village's response to him as evidence of disparate treatment. The defendants contend that because the Supreme Court decided that the plaintiffs here had stated an equal protection claim, they offered Mr. Kucera this option in order to avoid further litigation. Defendants argue that this change in the Village's approach reflects a "new policy" that constitutes a subsequent remedial measure, which is inadmissable evidence under Fed. R. Evid. 407.

However, the defendants have not shown how their treatment of Mr. Kucera qualifies as a subsequent remedial measure. Rule 407 provides that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm

14

less likely to occur, evidence of the subsequent measures is not admissible to prove negligence [or] culpable conduct . . . ." This rule is typically used by a defendant in a premise or products liability case to exclude evidence of repairs made after an injury, with the policy rationale for the Rule 407 exclusion being "to encourage safety improvements by preventing their being used as evidence to show that the defendant should have made the improvements earlier." *Traylor v. Husqvarna Motor*, 988 F.2d 729, 733 (7th Cir. 1993). However, the Rule has been applied in the civil rights context as well. *Specht v. Jensen*, 863 F.2d 700 (10th Cir. 1988); *McGaughey v. City of Chicago*, No. 84 C 10546, 1987 WL 12213 (N.D. Ill., June 9, 1987). Whatever the context, the burden remains the same: the party wishing to exclude evidence of subsequent remedial measures has the burden of proving any preliminary facts necessary to bring the exclusionary rule into play. 23 Wright & Graham, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5291, at 154 (1980 ed.). The defendants have not satisfied this burden.

Whether there was a water main extension right-of-way "policy" in the Village prior to the plaintiffs' request is one of the major factual disputes of this case, and the Village's differential treatment of Ms. Olech and Mr. Kucera is subject to a number of interpretations. As we stated in our prior summary judgment opinion, "[i]t will be for the jury to decide whether the Village's request of Mr. Kucera reflected application of a new policy, implementation of a new policy, a request driven by the pendency of this litigation, or something else." *Olech*, 2002 WL 1058843 at *18. What defendants ask is that the Court conclusively characterize their treatment of Mr. Kucera as a subsequent remedial act. But, the defendants have offered no evidence to demonstrate what they argue – that after the Supreme Court decision the Village put into effect some new policy for handling requests for hook-ups to water service. And, even if they had offered such evidence, the

15

way in which the Village dealt with the Kucera request might be admissible to show that it was feasible for the Village to handle the Olechs' request in the same way.

Finally, we address the defendants' argument that because Mr. Kucera requested connection to the water system after the plaintiffs did (and after this suit was filed), he is not similarly situated to the plaintiffs. According to defendants, any actions by the Village after 1995 are irrelevant to the similarly situated determination. The defendants have offered no authority for the position that the similarly situated inquiry is limited to any particular time frame. At most, the fact that the Kucera request came some six years after the plaintiffs' request in 1995 goes to the weight of that evidence, and not its admissibility. Accordingly, defendants' Motion in *Limine* No. 4 is DENIED.

## V.

In Motion in *Limine* No. 5, the defendants seek to exclude opinion testimony by plaintiffs' expert, Steven Bashaw, that the Village treated Ms. Olech differently than other similarly-situated property owners who were connected to the Village water supply. By a review of tract searches, Mr. Bashaw – who is a real estate attorney – identified and reviewed twelve residential properties within the Village that were receiving water through the Village water main. Mr. Bashaw offered the opinions that (1) these properties were "similarly situated" to the plaintiffs' property, and (2) in demanding an easement from the plaintiffs as a condition of the water main extension, the Village had not treated the plaintiffs in a "uniform and non-discriminatory manner" when compared to these other property owners. The defendants claim that these opinions are conclusions about the Village's intent in this matter, and that Mr. Bashaw is neither qualified to give an expert opinion on this subject nor should he be allowed to do so (Defs.' Mot. at 19-20). The plaintiffs contend that both

statements should be allowed into evidence (Pls.' Resp. at 14-15). The Court finds that the first statement is admissible, but not the second.

As to the first statement, the defendants concede that Mr. Bashaw may testify that there are other property owners who obtained Village water service without granting easements or dedications. Defendants nonetheless urge that he be barred from opining that these owners were similarly situated to the plaintiffs but were treated differently. In order to be admissible, expert a test must be reliable and must assist the jury in resolving a fact in issue. *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). In determining reliability, courts must assess the qualifications of the expert and the methodology used. *Smith v. Ford Motor Co.*, 215 F3d 713, 718 (7th Cir. 2000). Here, we find that Mr. Bashaw has the qualifications to opine about whether these other situations were similar to that presented by plaintiffs' request. We are unpersuaded that this opinion is not fairly based in Mr. Bashaw's expertise or in the investigation that he conducted. While the defendants point to various factors that it claims Mr. Bashaw did not consider, an expert need not consider all variables for his opinion to be admissible. *See Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2000), quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986). The defendants will be able to raise these points to attack the weight, if any, that the jury should give to Mr. Bashaw's opinion on this point.

However, Mr. Bashaw's second opinion presents a different matter, as it contains opinions about the intent of the Village. Mr. Bashaw states that the Village's conduct "cannot be said to be . . . non-discriminatory." The plaintiffs in this case have the burden of proving that the defendants intentionally treated them differently than others who were similarly situated. For Mr. Bashaw to opine that the Village treated the plaintiffs in a discriminatory manner when they sought an easement, he must draw factual inferences regarding the intent of the Village.

17

While Fed. R. Evid. Rule 704(a) allows "testimony in the form of an opinion or inference otherwise admissible" even if "it embraces an ultimate issue to be decided by the trier of fact," the Advisory Committee Notes to Rule 704 make clear that the rule does not "lower the bar so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of opinions which waste time. These provisions afford ample assurances against admission of opinions which would merely tell the jury what result to reach . . . ." In this case, determining the Village's intent is the province of the jury. Mr. Bashaw possesses no more ability than a juror to discern intent, and to allow him to opine on the intent of the defendants matter would invade -- and perhaps usurp – the fundamental fact-finding role of the jury. *See, e.g., Isom v. Howmedica, Inc.*, No. 00 C 5872, 2002 WL 1052030, at *1-2 (N.D. Ill., May 22, 2002); *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1999).

Accordingly, defendants' Motion in *Limine* No. 5 is GRANTED in part and DENIED in part. Mr. Bashaw will be allowed to opine that the properties he studied were similarly situated to the Olechs' property; he will be barred from offering the opinion that the Village treated plaintiffs in a discriminatory manner or other opinions concerning the intent of the defendants.

## CONCLUSION

For the foregoing reasons:

1. Defendants' Motion in *Limine* No. 1 is GRANTED;

2. Defendants' Motion in *Limine* No. 2 is GRANTED as to evidence of the outcome of the storm water drainage litigation, and conditionally GRANTED as to the statements made during settlement discussions.

3.    Defendants' Motion in *Limine* No. 3 is DENIED insofar as the evidence addressed in that motion is offered against the Village; however, the evidence may not be offered against the individual defendants in their individual capacities.

4.    Defendants' Motion in *Limine* No. 4 is DENIED.

5.    Defendants' Motion in *Limine* No. 5 is GRANTED in part and DENIED in part.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: October 10, 2002

19